**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DUANE GATES, | ) | 3:24-CV-01471 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS LOCAL 478, | ) | |
| INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS, GARRY | ) | August 11, 2026 |
| GYENIZS, ALAN PERO, and JOSEPH | ) | |
| CAMPOLI, | ) | |
| *Defendants*. | | |

**RULING AND ORDER ON PLAINTIFF'S MOTION TO REMAND AND
DEFENDANTS' MOTIONS TO DISMISS**

Sarala V. Nagala, United States District Judge.

In this removed action, Plaintiff Duane Gates sues Defendants International Union of Operating Engineers Local 478 (the "Local"); International Union of Operating Engineers (the "International"); the Local's Business Manager, Garry Gyenizs; the Local's Auditor, Joseph Campoli; and the Northeast Regional Director for the International, Alan Pero, alleging numerous state tort claims related to the end of his employment with the Local. The Court previously denied a motion to remand this action to state court, and granted Defendants' motions to dismiss Plaintiff's original complaint. Following the filing of a second amended complaint, Plaintiff has again moved to remand, which Defendants oppose; Defendants, for their part, have moved to dismiss the second amended complaint. For the reasons discussed herein, Plaintiff's motion to remand is granted and Defendants' motions to dismiss are denied as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

For purposes of assessing Plaintiff's motion to remand, which is based on an alleged lack of subject matter jurisdiction, the Court accepts as true the facts set forth in the Second Amended Complaint ("SAC"), ECF No. 64.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.   Procedural Background

Plaintiff Duane Gates originally commenced this action in state court, alleging numerous state tort claims related to the end of his employment with the Local, including common law wrongful termination, a violation of Conn. Gen. Stat. § 31-51q, constructive fraud, breach of fiduciary duty, constructive discharge, defamation, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, and *respondeat* superior.  Compl., ECF No. 1-1.  Defendants timely removed the case to federal court pursuant to 28 U.S.C. §§ 1331 and 1441, contending that Plaintiff's state law claims were completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq*. Defendants moved to dismiss the complaint, and Plaintiff thereafter moved to remand this matter to state court.

By Order dated September 16, 2025, the Court denied Plaintiff's motion to remand.  *Gates v. International Union of Operating Engineers Local 478 et al.*, No. 3:24-CV-01471 (SVN), 2025 WL 5083171 (D. Conn. Sept. 16, 2025).  In its ruling, the Court found that it had federal question jurisdiction over Plaintiff's Conn. Gen. Stat. § 31-51q claim because it expressly invoked the First Amendment to the U.S. Constitution.  *Id.* at *3; *see also* ECF No. 1-1 at 6 (stating that Plaintiff's decision was "an exercise of his rights to free speech and association as codified by the First Amendment to the United States Constitution").  The Court also concluded that Plaintiff's claims of constructive fraud and breach of fiduciary duty were preempted by Section 301 of the LMRA,

effectively rendering them federal claims. *Gates*, 2025 WL 5083171 at *5. Having determined that it had jurisdiction to adjudicate Plaintiff's claims, the Court then granted Defendants' motions to dismiss as to all claims asserted against them under Rule 12(b)(6), but afforded Plaintiff leave to amend as to all claims except constructive discharge, negligent infliction of emotional distress, and respondeat superior. *Id.* at *13.

Thereafter, Plaintiff filed an amended complaint, ECF No. 59, which was superseded by the filing of the SAC, ECF No. 64, as well as a renewed motion to remand this action to state court, ECF No. 65. Defendants oppose this motion. ECF No. 76. Additionally, all Defendants have moved to dismiss the SAC. ECF Nos. 71 (International and Pero), 73 (Campoli, Gyenizs, and the Local). Plaintiff opposes Defendants' motions to dismiss. ECF Nos. 87, 88.

B. The SAC

The SAC details a series of actions Defendants allegedly undertook to wrongfully terminate Plaintiff's employment with the Local. Plaintiff states that he began working for the Local on October 25, 2004, and that toward the end of his employment with the Local, Plaintiff served as President (an elected position) and Business Agent (an appointed position). ECF No. 64 ¶¶ 13–14.

During the summer or fall of 2023, Plaintiff announced that he was running for Business Manager, the highest-ranking position within the Local. *Id.* ¶¶ 18, 22. After his announcement, Plaintiff alleges that Defendant Gyenizs, the Local's Business Manager at all relevant times, conspired with other Local officers in secret meetings to prevent him from winning the office. *Id.* ¶¶ 7, 25–28. During one such meeting, Defendant Campoli referred to Plaintiff in derogatory terms and stated he would not work for Plaintiff if he became Business Manager. *Id.* ¶ 26. Plaintiff alleges that Defendant Campoli worked with Gyenizs, additional Local officers, and the International to facilitate "taking [him] out." *Id.* ¶¶ 27, 28.

3

On November 9, 2023, Gyenizs called Plaintiff into a meeting with Gyenizs and Defendant Pero. *Id.* ¶¶ 31–32. During the meeting, Pero falsely accused Plaintiff of knowingly allowing cash payments to members and allowing a new member to receive an underpayment in wages. *Id.* ¶ 33. Pero stated, "why would you allow that unless you were getting something monetary from the contractor as kickbacks!!" *Id.* ¶ 34. In response, Plaintiff explained that he was not aware of the new member receiving underpayment and could not "fix the problem if [he didn't] know about it." *Id.* ¶¶ 35–36.

Pero also accused the Local of having a history of corruption—implying that Plaintiff was corrupt—and threatened to place the Local under a trusteeship or monitorship, both of which would have effectively resulted in Plaintiff's termination. *Id.* ¶¶ 37–39. Pero then suggested a third option: that Plaintiff could retire. *Id.* ¶ 39. Pero indicated that his statements came directly from the International's general president. *Id.* ¶ 40. The day after the meeting, Gyenizs told Plaintiff three times that he had to retire and that "[t]he International isn't going away." *Id.* ¶ 41. That same day, Gyenizs spoke on the phone with Plaintiff's wife and told her that Plaintiff needed to retire. *Id.* ¶ 42.

Additionally, Plaintiff learned that another member of the Local, Gustavo, stated in September or October of 2023 that he had "inside help from Campoli and the International to take [Plaintiff] out." *Id.* ¶¶ 44, 45. Plaintiff explains that these statements were made "with the knowledge of Gyenizs and Campoli, and at the behest of the Local and those individuals." *Id.* ¶ 46. Plaintiff also learned that International representative John Stevens, who is not named as a party to this action, made several defamatory statements about the Plaintiff to Local members. *Id.* ¶ 47. Specifically, Stevens described Plaintiff as corrupt and stated that Plaintiff "embezzled 2 million dollars," "stole from the Union," and "should be in jail." *Id.* ¶ 48. Plaintiff explains that

these statements were made in Stevens' capacity as a representative of the International, and were made with its knowledge and its behest. *Id.* ¶ 49.

These actions, including threats of defamatory statements being made public, forced Plaintiff to retire early at the age of sixty. *Id.* ¶ 52. By two letters dated November 10, 2023, Plaintiff resigned as President and Business Agent of the Local. *Id.* ¶¶ 15, 16. After he resigned, Defendant Campoli became the Local's Business Agent, a position Plaintiff had held for nearly thirteen years. *Id.* ¶ 29. Although the Local and/or the International gave Plaintiff a confidential severance agreement to execute, he refused to sign it. *Id.* ¶¶ 50, 53. Plaintiff alleges that the International acted as his employer by threatening adverse employment actions against him, demanding his resignation, and offering him a severance package. *Id.* ¶ 51.

Plaintiff brings the following claims in the SAC: (1) common law wrongful termination; (2) a violation of Conn. Gen. Stat. § 31-51q based on Plaintiff's rights to free speech and association as codified by the Connecticut Constitution only; (3) defamation as to Pero and the International; (4) breach of contract—specifically the Local's Harassment and Discrimination Policy—against the Local; and (5) intentional infliction of emotional distress. *See generally* ECF No. 64. Thus, Plaintiff has eliminated those claims that the Court previously found created federal jurisdiction. *See Gates*, 2025 WL 5083171, at *3–5 (concluding Conn. Gen. Stat. § 31-51q claim that invoked the U.S. Constitution, constructive fraud, and breach of fiduciary duty claims provided federal jurisdiction).

## II.    MOTION TO REMAND

### A.    Legal Standard

A defendant may remove an action to federal court under 28 U.S.C. § 1441(a) if the plaintiff's "well-pleaded complaint" presents a federal question, such as a federal cause of action. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The presence of a federal question renders

the entire case removable to federal court, even if the complaint contains other state law claims that would not fall within a federal court's original jurisdiction.  28 U.S.C. § 1441(c)(1).  If there is no federal question or another basis for the exercise of federal jurisdiction, the federal court may remand the case to state court.  28 U.S.C. § 1447(c).

Generally, a case may not be removed to federal court on the basis of a *defense* of federal preemption, even if the defense is anticipated in the complaint, and even if preemption is the only issue in the case.  *Caterpillar Inc.*, 482 U.S. at 393.  "Occasionally, however, 'the pre-emptive force of a statute is so extraordinary' that any claim based on preempted state law is considered a federal claim arising under federal law."  *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232 (2d Cir. 1997) (quoting *Caterpillar, Inc.*, 482 U.S. at 393); *see also Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

"This 'complete pre-emption corollary to the well-pleaded complaint rule' applies to claims under § 301 of the LMRA."  *Foy*, 127 F.3d at 232 (quoting *Caterpillar, Inc.*, 482 U.S. at 393).  Section 301 of the LMRA confers jurisdiction in the federal courts for suits for violations of collective bargaining agreements.  29 U.S.C. § 185; *Caterpillar, Inc.*, 482 U.S. at 394.  Suits based upon the terms of union constitutions also fall within the preemptive sweep of § 301.  *Wall v. Constr. & Gen. Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d Cir. 2000); *see also Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991).  To effectuate the policy goal underlying § 301 of ensuring uniform and predictable federal resolution of labor disputes, the Supreme Court has held that "the pre-emptive effect of § 301 must extend beyond

6

suits alleging contract violations" and embrace "suit[s] alleging liability in tort." *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11 (1985).

As the Second Circuit has observed, "[t]he principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied." *Foy*, 127 F.3d at 233. On the one hand, the Court must consider "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract," *Allis Chalmers*, 471 U.S. at 213, or whether the tort analysis is "substantially dependent" upon analysis of the labor agreement, *id.* at 220; *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) (preempting state claim where "resolution of a state-law claim depends upon the meaning" of labor agreement). On the other hand, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).

Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Id.* at 123. Thus, "[w]hether a state cause of action may proceed in state court depends on 'the legal character of a claim, as independent of rights under the collective bargaining agreement[.]'" *Foy*, 127 F.3d at 233 (quoting *Lingle*, 486 U.S. at 409. Courts must be mindful that preemption under Section 301 is meant to "ensure[] that federal law will be the basis for interpreting collective bargaining agreements," but "says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle*, 486 U.S. at 409.

As an initial matter, the Court finds that the contract at issue in this case, the International's Constitution (the "Constitution"), is a labor contract within the meaning of Section 301 of the

LMRA.  *See Wooddell*, 502 U.S. at 101.  Therefore, if resolution of any of Plaintiff's state law claims require interpretation of the terms of the Constitution, or if the tort claims at issue are inextricably intertwined with or substantially dependent upon the analysis of the Constitution, those claims are preempted.  *See Foy*, 127 F.3d at 233.  And if at least one claim is preempted, the Court can exercise subject matter jurisdiction over the entire action and must deny Plaintiff's motion for remand.  *See* 28 U.S.C. § 1447(c)(1).  The Court takes each of Plaintiff's counts in turn, and concludes that none require interpretation of the terms of the Constitution or are either inextricably intertwined with or substantially dependent upon analysis of it.  Thus, Plaintiff's state law claims are not completely preempted by § 301, and there is no basis for the exercise of federal jurisdiction.

A.  Count One:  Common Law Wrongful Termination

Count One of the SAC advances a common law wrongful termination claim.  ECF No. 64 ¶¶ 54–59 (Count One).  The Court concludes that this claim does not implicate the Constitution, such that it effectively becomes a federal claim.

Generally, employers and employees in Connecticut have an at-will employment relationship.  *Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 697 (2002).  But beginning in the late 1950s, Connecticut courts began to carve out exceptions to that doctrine, giving rise to tort claims for common law wrongful discharge.  *Id.* at 698.

To evaluate wrongful termination claims, courts consider whether the plaintiff has alleged that his discharge violated any explicit statutory or constitutional provision, or whether he alleged that his dismissal contravened any judicially conceived notion of public policy.  *Id.* at 699. Plaintiff here alleges that the Local and International's threats to publicly make false statements about him engaging in wrongful and criminal acts prompted his early retirement, in violation of "important public policies" in Connecticut, including "maintaining work environments free from

threats and intimidation."  ECF No. 64 ¶¶ 54–58 (Count One).  Defendants argue that the Court would have to consult the Constitution to determine whether their conduct was consistent with rights and obligations provided for within it, see ECF No. 76 at 18-19, 22, but they do not sufficiently explain *why* the Court would need to interpret the Constitution to determine whether their actions violated any particular state public policy.  Although it is true that the Constitution allows the International's General President "the full power to suspend or remove" local union officers employees for purposes of "correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements . . . , or otherwise carrying out the legitimate objects" of the International, ECF No. 76-1 at 27, resolution of Plaintiff's common law constructive discharge claim does not require interpretation of this provision.  For instance, if this provision (or another) of the Constitution were to somehow conflict or be inconsistent with an asserted Connecticut public policy, the Court would assess the public policy at issue and decide whether Defendants' actions violated it without deference to—or, indeed, without regard for—the language of the Constitution.  Perhaps the Constitution's language could help inform whether Defendants acted in violation of public policy, but Plaintiff's constructive discharge claim cannot be said to be substantially dependent on it.  *See Foy*, 127 F.3d at 234 (finding negligent misrepresentation claim not preempted because, while the collective bargaining agreement might be consulted, it did not need to be interpreted to decide the issue).

Moreover, the SAC does not allege that Defendants invoked any Constitution-governed process to prompt his discharge; indeed, he alleges quite the opposite.  *See, e.g.*, ECF No. 64 ¶ 25 ("Gyenizs held several secret meetings with other Local line officers"); *id.* ¶¶ 27–28 (Defendant Campoli told other members "[w]e are taking Gates out and we have inside help"); *id.* ¶¶ 32–33 (Defendant Pero accusing Plaintiff of misconduct in meeting with International representative); *id.*

¶¶ 41–42 (Defendant Gyenizs told Plaintiff and his wife that Plaintiff "needed to retire"); *id.* ¶¶ 47–48 (Stevens told local members that Gates is "corrupt," and that he "embezzled 2 million dollars," and "stole from the union").

The Court also rejects Defendants' argument that, in order to demonstrate that the International was his employer, the Court will be required to interpret the Constitution. Connecticut gives the term "employer" its ordinary meaning in the retaliation context.  *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 152–53 (D. Conn. 2018); *Varley v. First Student, Inc.*, 158 Conn. App. 482, 498 (2015) (an employer is "one who employs the services of others; one for whom employees work and who pays their wages or salaries") (cleaned up).  Though it is possible that the Court could engage with the Constitution to analyze the employment relationship between the parties, the employment relationship is also informed by other facts, information, and documents. *See Mercer*, 337 F. Supp. 3d at 154 (finding union was not the plaintiff's employer given lack of allegations that the union "hired [the plaintiff], directed his work, or paid his wages" without reference to the union constitution); *see also* ECF No. 64 ¶ 2 (the International "is a national trade union operating local affiliates"); *id.* ¶ 51 (alleging that the International "demanded [Plaintiff's] resignation" and "offered [Plaintiff] a severance package," without invocation of any provision of the Constitution).  The possibility that the Constitution may provide helpful instruction does not mean that interpretation of the Constitution is required to assess the presence of an employer-employee relationship.

Accordingly, Plaintiff's common law wrongful termination claim is not preempted by LMRA.

B.  Connecticut General Statutes § 31-51q

Plaintiff's Count Two is a retaliation claim under Connecticut state statute, and—in this case—is substantially similar to Count One.  Like Count One, it does not provide a basis for federal jurisdiction.

"In order to demonstrate a violation of [Conn. Gen. Stat.] section 31-51q, a plaintiff must prove that: (1) he was exercising rights protected by the first amendment to the United States Constitution (or an equivalent provision of the Connecticut Constitution); (2) he was fired on account of his exercise of such rights; and (3) his exercise of his first amendment (or equivalent state constitutional rights) did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer."  *Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 406–07 (D. Conn. 2013) (quoting *Kennedy v. Coca–Cola Bottling Co. of New York, Inc.*, 170 F. Supp. 2d 294, 299 (D. Conn. 2001)).

First, Defendants' argument that the claim is preempted because the Court must interpret the Constitution to determine the employment relationship fails for the reasons stated above.

Second, Defendants contend that "[b]ecause the right to run for union office is based 'directly on rights created by' the labor contract, the claim is preempted."  ECF No. 76 at 26 (quoting *Caterpillar Inc.*, 482 U.S. at 394).  But, like in *Caterpillar*, Plaintiff decided not to bring suit based on rights conferred upon him by the Constitution—as is his right as "master[] of the complaint."  *Caterpillar Inc.*, 482 U.S. at 394.  Plaintiff's claim, instead, is that his "announcement that he was running for the Business Manager position was an exercise of his rights to free speech and association as codified by the Connecticut Constitution."  ECF No. 64 ¶ 54 (Count Two).  As Plaintiff explains in his reply brief, "[w]hether [he] had the right to run for Business Manager under the union constitution is not material to whether he exercised his rights to free speech by *announcing his intention* to run for that position."  ECF No. 86 at 7 (emphasis added).  Put another

11

way, even if the Constitution precluded Plaintiff from running for the position due to some ineligibility, he could still have a potentially viable § 31-51q claim based on retaliation he claims occurred simply based on the fact that he *announced* his intention to run.  Thus, applying the facts at issue to the elements of a § 31-51q claim does not substantially depend upon the Constitution. And though Defendants may be right that Plaintiff's announcement "substantially interfered" with his working relationship with his employer, this goes to the merits of the claim.  *See* ECF No. 76 at 28.   The alleged breakdown of this relationship does not require interpretation of the Constitution.  Plaintiff's § 31-51q claim is unlike the state claims at issue in *Wall*—the primary case cited by Defendants on this point—because the state claims in *Wall* required interpretation of the union constitution to determine if the union's refusal to readmit the plaintiffs to the union was proper.  *See Wall*, 224 F.3d at 178.  Therefore, Plaintiff's § 31-51q claim is not preempted by the LMRA.

C. Defamation

Next, the Court concludes that Plaintiff's defamation claim is not preempted.

Plaintiff alleges in Count Three that Mr. Stevens (on behalf of the Local) and Defendant Pero knowingly published false statements about Plaintiff engaging in criminal activity to other members of the Local.  ECF No. 64 ¶¶ 54-61 (Count Three).  To state a claim for defamation under Connecticut law, a plaintiff must allege that: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  *Iosa v. Gentiva Health Services, Inc.*, 299 F. Supp. 2d 29, 37–38 (D. Conn. 2004). Defendants insist that the Constitution empowers union leaders to engage in processes that permit the alleged defamatory statements, *see* ECF No. 76 at 29–31, but, as discussed above, the SAC does not allege that Defendants made these statements as a part of a procedure outlined in the

12

bargaining agreement. Defendants rest their argument upon cases in which the alleged defamatory statements were attendant to a formal complaint and disciplinary charges initiated by union leadership. *See Panczykowski v. Laborers' Int'l Union of N. Am.*, 2 F. App'x 157, 161 (2d Cir. 2001) (defamation claims premised upon complaint for trusteeship and allegations in formal disciplinary charges, along with related reports in a union managing and public statements the attorney made regarding the complaint and charges); *Carroll v. Int'l Ass'n of Machinists & Aerospace-Workers*, 221 F. App'x 810, 811 (11th Cir. 2006) (defamation claims premised upon statements made by the international union in the process of formally disciplining employees "pursuant to the [union] Constitution" and imposing a trusteeship on the local union). In *Panczykowski*, for instance, preemption was appropriate because the "truth or falsity of the allegations in the complaint for trusteeship and disciplinary charges depended upon interpretation of terms defined by the [union] constitution," including an ethics and disciplinary procedure and an ethical practices code. 2 F. App'x at 159, 161. Here, however, assessing Defendants' statements does not require interpretation of the Constitution because they do not "have meaning only in the context of [union constitution] provisions" and proceedings. *Id.* at 161. Indeed, there was no formal complaint or procedure employed by Defendants, and the truth or falsity of Defendants' alleged statements does not rest on provisions concerning such complaints or procedures set forth in the Constitution. Therefore, Plaintiff's defamation claim is not preempted.

D. Breach of Contract

The Court reaches the same conclusion for Count Four, alleging breach of contract.

In Count Four of the SAC, Plaintiff alleges breach of contract—specifically of the Harassment and Discrimination policy maintained by the Local. ECF No. 64 ¶¶ 54-57 (Count Four). Under Connecticut law, a breach of contract claim has four elements: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and

(4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). This claim straightforwardly emerges from policies that exist separate from the Constitution. Defendants do not address this claim in their opposition to the motion to remand, or otherwise suggest that the Harassment and Discrimination policy is a "labor agreement" for purposes of preemption. By all accounts, Plaintiff's breach of contract claim does not substantially depend upon interpretation of the Constitution and is not preempted by the LMRA.

E. Intentional Infliction of Emotional Distress

Finally, Plaintiff's claim for intentional infliction of emotional distress ("IIED") is not preempted.

In Connecticut, an IIED claim consists of four elements: (1) the actor intended to inflict emotional distress or should have known it would be the likely result; (2) the conduct was extreme and outrageous; (3) the defendant's conduct caused plaintiff's distress; and (4) the emotional distress Plaintiff sustained was severe. *See Bass ex rel. Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 327 (D. Conn. 2010) (quoting *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000)). Plaintiff alleges that he suffered severe emotional distress when Defendant Pero threatened to publicly state that Plaintiff had committed crimes and other wrongful acts, when Defendant Pero threatened to take adverse action against the Local membership, and when Stevens falsely stated that Plaintiff committed criminal acts. ECF No. 64 ¶¶ 54–55 (Count Five). Defendants argue that threats to restructure the Union to oust Plaintiff are "subject to rights and obligations under the IUOE Constitution," and that the claim is therefore preempted, ECF No. 76 at 7, 9–13, but this misapprehends the focus of Plaintiff's IIED claim, which centers on statements that Defendant Pero and Mr. Stevens made about Plaintiff engaging in wrongful and criminal conduct. *See* ECF No. 64 ¶ 58 (Count Five) ("The defendants knew that the *false allegations* would cause extreme damage to the plaintiff's reputation . . .") (emphasis added).

14

Defendants are correct that in some cases, determination of "extreme and outrageous" conduct requires reference to the collective bargaining agreements, where the terms of those agreements have been invoked to justify the defendants' actions. *See, e.g., Adonna v. Sargent Mfg. Co.*, 485 F. App'x 445, 448 (2d Cir. 2012) (a company's decision to suspend the plaintiff, reduce his pay, and reassign him could only create an unreasonable risk of emotional distress if employer lacked the right to manage its workforce in those ways under the terms of the collective bargaining agreement); *Anderson v. Coca Cola Bottling Co. of N.Y., Inc.*, 772 F. Supp. 77, 82 (D. Conn. 1991) (IIED claim preempted where it required analysis of the bargaining agreement "to determine whether warnings were warranted and properly given under the agreement"); *Petrucelli v. Cytec Indus.*, No. 3:95-CV-1055 (AHN), 1996 WL 684401, at *5 (D. Conn. May 23, 1996) (IIED claim preempted where it was based on promotions, layoffs, and grievances, "all of which are regulated by the CBA").

But here, again, the SAC does not concern managerial or disciplinary actions taken against Plaintiff pursuant to the Constitution. Rather, it alleges statements beyond the purview of the Constitution—threats and accusations made outside of any colorable disciplinary process. The Court agrees with Plaintiff that Defendants' assertion that the Constitution may provide relevant insight "does not support an argument that the facts are so intertwined with the union constitution" that the claim is preempted. ECF No. 86 at 3. A court need not interpret the Constitution in order to assess the viability of Plaintiff's IIED claim. Thus, Count Five for intentional infliction of emotional distress is not preempted.

## III.   CONCLUSION

For the reasons described herein, the state law claims brought in Plaintiff's SAC are not preempted by § 301 of the LMRA, such that there is federal jurisdiction over this action. The

15

Court therefore lacks jurisdiction over this case and grants Plaintiff's motion for remand. The Court does not rule on Defendants' motions to dismiss, which must be adjudicated by the Connecticut Superior Court.

The Clerk is directed to remand this action to the Connecticut Superior Court, New Haven.

**SO ORDERED** at Hartford, Connecticut, this 11th day of August, 2026.

_/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

16